**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

ROBIN GAIL JUSTICE,                     )
                                        )
            **Plaintiff,**              )
                                        )
v.                                      )          **CIVIL ACTION NO. 1:08-00304**
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
            **Defendant.**              )

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on

the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 13 and 15.) Both parties

have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 3

and 5.)

The Plaintiff, Robin Gail Justice (hereinafter referred to as "Claimant"), filed an application

for SSI on May 26, 2004 (protective filing date), alleging disability as of December 31, 1996, due

to severe depression, anxiety, bipolar disorder, nerves, abscessed teeth, fibromyalgia, and swollen

glands. (Tr. at 58, 59-62, 66, 79.) The claim was denied initially and upon reconsideration. (Tr. at

26-28, 33-35.) On October 3, 2005, Claimant requested a hearing before an Administrative Law

Judge (ALJ). (Tr. at 39.) The hearing was held on May 4, 2006, before the Honorable R. Neely

Owen. (Tr. at 356-87.) By decision dated June 14, 2006, the ALJ determined that Claimant was not

entitled to benefits. (Tr. at 16-23.) The ALJ's decision became the final decision of the

Commissioner on March 14, 2008, when the Appeals Council denied Claimant's request for review.

(Tr. at 6-9.) On May 12, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the

2

claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area

(episodes of decompensation), we will use the following four-point scale: None, one
or two, three, four or more. The last point on each scale represents a degree of
limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA

determines their severity. A rating of "none" or "mild" in the first three functional areas (activities

of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth

(episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless

evidence indicates more than minimal limitation in the claimant's ability to do basic work activities.

20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder

to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§

404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental

impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The

Regulation further specifies how the findings and conclusion reached in applying the technique must

_____

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including
depression, will be deemed severe when (A) there is medically documented continuous or
intermittent persistence of specified symptoms and (B) they result in two of the following: marked
restriction of activities of daily living; marked difficulties in maintaining social functioning; marked
difficulties in maintaining concentration, persistence or pace; or repeated episodes of
decompensation , each of extended duration or (C) there is a medically documented history of a
chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation
of ability to do basic work activities with symptoms currently attenuated by medication or
psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease
process resulting in such marginal adjustment that a minimal increase in mental demands or change
in the environment would cause decompensation; or (3) a current history of 1 or more years'
inability to function outside a highly supportive living arrangement, and the indication of a
continued need for such an arrangement.

be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity at any time relevant to the decision. (Tr. at 18, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from hepatitis C, bipolar disorder, and a history of opioid dependence, which were severe impairments. (Tr. at 18, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity to perform a limited range of light exertional work, as follows:

> The claimant can lift or carry 10 pounds frequently, 20 pounds occasionally, can sit, stand, or walk about 6 hours in an 8 hour day, and has no limits on pushing or pulling with the extremities. The claimant can perform occasional stooping, kneeling, crouching, crawling, and climbing of ramps or stairs. The claimant has no manipulative, visual, or communicative limitations. The claimant should avoid concentrated exposure to extreme cold, vibration, and hazards such as machinery and heights. The claimant has no other environmental limitations. Due to nervousness in crowds, the claimant should avoid occupations that involve working in busy crowded areas with the public. The claimant has the ability to remember work locations, to perform simple low stress work tasks, and to maintain concentration, persistence, or pace for a 40 hour work week. The claimant is able to interact adequately with supervisors and co-workers in a normal work environment.

(Tr. at 21, Finding No. 4.) At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 22, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the

administrative hearing, the ALJ concluded that Claimant could perform jobs such as a file clerk, general office clerk, and vehicle cleaner. (Tr. at 22-23, Finding No. 9.) On this basis, benefits were denied. (Tr. at 23, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on March 8, 1959, and was 47 years old at the time of the administrative hearing, May 4, 2006. (Tr. at 59, 361.) Claimant had a high school education. (Tr. at 84, 362.) Claimant had no past relevant work. (Tr. at 22, Finding No. 4; 362.)

The Medical Record

   The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

   Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's credibility. (Document No. 14 at 4-8.) Claimant asserts that as a result of her bipolar disorder and hepatitis C, she experienced chronic fatigue, significant anxiety, bad nausea and diarrhea, weight loss, significant depression, crying spells, sleeping too much and not enough, memory deficits, avoidance of phone calls and people coming to her door, and decreased concentration. (Id. at 4.) She further asserts that she did not go out, socialize with friends, failed to care for her home and self properly, and did no cooking or yard work. (Id.) She contends however, that the ALJ failed to address many of these complaints in his credibility assessment, and to the extent that he mentioned them, they were considered "in a superficial manner." (Id.) Claimant asserts that the ALJ did not discuss how her symptoms affected her ability to engage in work related activities or whether her symptoms were consistent with her diagnoses. (Id.) She notes that the ALJ's credibility discussion "is barely a paragraph long, and [did] not include a review of the entire medical record before him, nor a discussion of the nature and extent of the disorder he is addressing." (Id. at 5.) Claimant contends therefore, that the ALJ failed to analyze the record in light of the evidence as required by SSR 97-6p. (Id. at 6.) Specifically, Claimant asserts that the ALJ noted her daily activities and social functioning in passing, and did not discuss her aggravating and precipitating factors, medication, or side effects. (Id.) Accordingly, Claimant asserts that the ALJ's credibility assessment is not supported by substantial evidence. (Id. at 6-8.)

7

The Commissioner asserts that the ALJ complied with the controlling regulations and Fourth Circuit precedent in assessing Claimant's credibility and that his decision is supported by substantial evidence. (Document No. 15 at 7-9.) The Commissioner notes that the ALJ supported his credibility finding with four facts. First, the ALJ noted that Claimant's treating physician observed that her hepatitis C symptoms consisted of only constipation and esophagitis, as opposed to fatigue as alleged by Claimant. (Id. at 8.) Second, the ALJ noted that Claimant had a normal gait and station on physical exam. (Id.) Third, the ALJ noted that Claimant's treating and examining physicians reported no functional limitations. (Id.) Finally, the ALJ noted that Dr. Tessnear testified that Claimant's counselors' and physicians' clinical notes suggested only mild to moderate limitations in some areas. (Id.) Additionally, the Commissioner points out that Claimant's credibility was suspect based on inconsistencies in the record. (Id.) The Commissioner notes that Claimant reported to Southern Highlands that her monthly income was $139.00 but that her opiate addiction cost $400.00 a month. (Id.) Thus, the Commissioner asserts that Claimant was more active than she professed. (Id.) Accordingly, the Commissioner asserts that the ALJ's credibility assessment is supported by substantial evidence and that Claimant's arguments are without merit. (Id. at 8-9.)

Analysis.

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms,

8

"the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2006). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
>> (i) Your daily activities;
>>
>> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>>
>> (iii) Precipitating and aggravating factors;
>>
>> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>>
>> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>>
>> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>>
>> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2006).

SSR 96-7p repeats the two-step regulatory provisions:

9

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the

10

individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 21.) The ALJ found, at the first step of the analysis, that Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. at 21.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 21-22.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Tr. at 21-22.)

The Court finds that the ALJ considered only some of the factors under 20 C.F.R. § 416.929(c)(4), in evaluating Claimant's pain and credibility. The ALJ acknowledged Claimant's testimony that she was diagnosed with hepatitis C and bipolar disorder. (Tr. at 21.) He further acknowledged her testimony that as a result of the hepatitis C, she had no energy, was weak, and suffered diarrhea and nausea. (Id.) As a result of the bipolar disorder, the ALJ acknowledged Claimant's reports of severe anxiety, an inability to be around crowds of people, impaired memory and concentration, and the fact that she primarily stayed home and would not answer the telephone.

11

(Id.) The ALJ also noted Claimant's testimony that she had fibromyalgia and pain in her right hip and leg, which made walking difficult. (Id.) Despite her alleged walking difficulties, the ALJ noted that on physical examinations, Claimant presented with a normal gait and station. (Tr. at 22.) He further noted that none of her treating and examining physicians suggested any functional limitations. (Id.) Nevertheless, to accommodate Claimant's arthritis and osteoarthritis, the ALJ reduced Claimant's residual functional capacity to work at the light exertional level. (Id.) The ALJ thus noted the nature and location of Claimant's impairments, as well as the limiting effects.

Regarding treatment, the ALJ noted that Claimant testified that she had to be clean of opiates before she could begin treatment. (Id.) Earlier in his decision, the ALJ noted that she had been drug free for eight months and was ready to begin hepatitis C treatment. (Tr. at 18.) The ALJ noted that though Claimant alleged fatigue, weakness, diarrhea, and nausea resulting from the hepatitis C, her treating physician, Dr. Patel, reported her symptoms to include only esophagitis and constipation. (Tr. at 18, 22, 307.)

With respect to Claimant's bipolar disorder, the ALJ noted that Dr. Tessnear, the medical expert, testified that Claimant's treating counselors and physicians suggested only mild to moderate mental limitations in some areas. (Tr. at 22.) Earlier in his decision, he noted that Dr. Vriceanu noted that Claimant interacted well and improved with medication. (Tr. at 20.) He also noted that Dr. Solomon, Ph.D., opined that Claimant had only mild limitations in her ability to maintain activities of daily living, social functioning, concentration, persistence, or pace, and that she had no episodes of decompensation. (Id.) Likewise, Dr. Binder, M.D., assessed only mild limitations, as did Dr. Tessnear. (Id.)

Claimant correctly points out that the ALJ failed to address the aggravating and precipitating factors of Claimant's symptoms, the medications that she was prescribed or their effectiveness and

12

side effects. Likewise, he neither discussed specifically the treatment Claimant received or was about to receive for her hepatitis C, the treatment for her bipolar disorder, nor her activities of daily living.  Given the ALJ's failure to address many of the factors set forth in 20 C.F.R. § 416.929(c)(4), in addition to the ALJ's scant review of the factors addressed above, the undersigned finds that remand is warranted for further assessment of Claimant's credibility. On remand, the ALJ specifically should address the factors set forth in 20 C.F.R. § 416.929(c)(4), including the impending treatment for Claimant's hepatitis C and the resulting side effects.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 13.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 15.) is **DENIED**, the final decision of the Commissioner is **REVERSED,** and this matter is **REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings and is **DISMISSED** from the active docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2009.

R. Clarke VanDervort
United States Magistrate Judge